FRANKLIN,
*January,*
1830.

## F. V. GOODRICH, & Co. *vs.* CHARLES BARNEY.

That *debt* lies upon a judgment, notwithstanding plaintiff has given a receipt for an order, which, when paid, is to be in full of said judgment.

Nor does it alter the case, that the order had not been presented when the action was brought, there being no funds of drawer in the hands of drawee.

That the separating from such order a writing from a third person, who had funds in the hands of such drawee, advising to the acceptance, but not binding himself nor the funds, does not destroy the order, nor make it a satisfaction of the judgment.

This was an action of *debt* upon judgment; to which several pleas in bar were pleaded, and to these special replications, and the issues were joined to the court. The county court decided the cause in favor of the plaintiffs, and their decision, and the grounds of it, were placed upon the record in the form of a bill of exceptions, certified by the judges, and brought to this court for a revision of their decision.

The facts found by the court, and thus certified, are, That, after the rendition of the judgment, *Goodrich* and *Charles Barney* met at the house of *Lemuel Barney*, in *Peru*, in the state of *New-York*; and made an agreement about the payment of said judgment—That said *Charles* drew an order upon *John Barney* of *Swanton*, for $39 20, being the amount of said judgment, in favor of the plaintiffs, and said *Goodrich* gave said *Charles* a receipt, as follows : " Received from *Charles Barney* his order on *John Barney*, for $39 20. If accepted and paid by him, it shall be in full of all demands up to this date ; but, if not accepted and paid, this to be null and void. *Peru, N. York*,March 24th, 1829. *F. V. Goodrich & Co.*"—That *Lemuel Barney*, father of the defendant, being present, told said *Goodrich* that he believed said *Charles'* order would not be accepted by said *John*, but, that he the said *Lemuel* had funds in the hands of his son, the said *John*, and that, if he gave directions to him, it would be accepted and paid. It was then agreed that *Lemuel* should write a request to *John* for him to accept said order. And *Lemuel* wrote under the order, upon the same paper, as follows : " *Peru*, March 24th 1829. *Jack*, it is my wish that you should accept an order signed

by *Charles Barney*, payable to *Frank. V. Goodrich*, & Co. if you and they can agree on terms ; it being what *Charles* owes said Co. on a settlement. The amount of said order is $39 20. *Lemuel Barney.*"—That, two days afterwards the plaintiffs commenced this action, without having presented the order for payment—That, on the day following, March 27th, the plaintiffs separated the writing of said *Lemuel* from the order, and presented the order for payment, and said *John* protested it. *John Barney* testified, that he should have accepted and paid the order, if the request of *Lemuel* had been presented with it. The county court considered this writing from *Lemuel* to be mere fatherly advice to his son, and of no binding force upon him or any one else ; and gave judgment for the plaintiffs. Exceptions to this decision were now argued before the Supreme Court.

*Argument for the defendant.*—The defendant contends, That, whatever might have been the former decisions on the subject, yet it is now settled law, that payment by bill of exchange is so far good, that the party receiving it is bound to conduct properly with it ; and if he neglect to pursue the necessary legal steps, he makes it his own, and the original debt is extinguished ; that he cannot pursue the drawer on the original debt, where he could not recover on the bill of exchange.—1 *Swift's Dig.* 421.—*Kid on Bills,* 174.—This was the legal effect of the agreement of the parties in the case under consideration. The bill was received by the plaintiffs ; and, if accepted and paid, it was to be in full satisfaction. But the delivery of the bill created an obligation on the plaintiffs to conduct properly with it. The understanding of the parties must have been that the plaintiffs would present it for acceptance and payment. Whether notice back of the non-acceptance was, or was not, necessary, we need not now inquire ; for, if the plaintiffs have, by misconduct or fraud, occasioned the protest of the bill, that has made it their own.

The first inquiry is, was the writing of *Lemuel Barney*, attached to the bill of exchange, such as bound him to refund to *John Barney* the money advanced on the bill had he paid it ? It was not necessay the writing should contain a promise to account to the drawee for the amount paid on the bill. It was sufficient that it contained a request to the drawee to honor the bill, and, had it been paid, would have charged *Lemuel Barney* as for money paid at his request. If the said *Lemuel* was not legally liable, yet, if the drawee would have trusted to the mere moral obligation of the said *Lemuel*, to refund the money, and would, upon this ground, have honored the bill, then the effect of the request was the same.

FRANKLIN,
January,
1830.

Goodrich et al.
*vs.*
Barney.

FRANKLIN, And even if neither of the foregoing positions are true, and the re-
January, quest was, as said by the court in the case, mere fatherly advice,
1830. yet, if it contained in itself such reasons as would have induced
Goodrich et al. the drawee to have honored the bill, the effect would have been
vs. the same to the defendant, and was therefore of equal importance
Barney. to him. The defendant then contends,

1. That the separating the direction or request of said *Lemuel* from said bill was an alteration of the same. Had the writing of the said *Lemuel* been only " I wish you to pay the above bill of exchange," there would have been no doubt of its being a part of said bill. It would then have agreed with an adjudged case. A wrote under a note, " I acknowledge myself to be holden as sure-ty for the payment of the above note." This was decided to be a part of the note, and made A a joint obligee with B. If any difference exists, it is because, in the present case, instead of re-ferring to the bill of exchange itself, for a description, the writing of the said *Lemuel* describes said bill with the consideration upon which it was drawn. This would be making trifling distinctions. The real question is, was it attached to the bill of exchange? Did it relate to the same? Was it procured by one party, and accepted by the other, as necessary to the acceptance and payment of said bill? If so, then whether it referred to the bill for a description, or whether it contained that description in itself, is mere mat-ter of form. The mode of identifying what bill of exchange the said *Lemuel* wished the said *John* to accept, would not deter-mine whether he was liable, or the writing was a part of the same.

But the request is important in another point of view. The re-quest of the said *Lemuel* specifies, that the order, or bill of ex-change, was for what the defendant owed the firm of *F. V. Goodrich & Co.*, on settlement. Now, had the bill been pre-sented in the same state in which it was received by the plaintiffs, and had it been accepted and paid by the drawee, it will hardly be contended, that, (when all taken together) it would not have been evidence of such settlement, and of the balance due the plaintiffs from the defendant. Suppose the consideration, upon which the order had been drawn, had been written on the back of it by the understanding of the parties, could the holder have erased it? Had the same been written at the bottom, and imme-diately under the bill, (no matter by whom) but at the request of one party and the consent of the other, could the holder have torn it off without destroying the bill? See 6 *Com. Law Rep.* 399, *Cow et al.* vs. *House.*—do. 400, *Smith* vs. *Thatcher.*

2. If the writing of the said *Lemuel* was not a part of the bill,

and the separating it from the bill was not an alteration, yet tearing it off from the bill was a gross fraud upon the defendant. The plaintiffs distinctly understood, that the writing of the said *Lemuel* was necessary to the acceptance of the bill : and it was proved, that, had the bill been presented with the writing attached to it, the bill would have been accepted and paid. For what object could it have been torn off? The time of commencing the suit sufficiently explains the object. It was done for the sole purpose of preventing the payment of the bill. If the withholding the writing by the plaintiffs was for the purpose of procuring a protest of the bill, it was then clearly fraudulent, and the plaintiffs cannot avail themselves of it to defeat the release or receipt given by them. If they could, then they would be taking advantage of their own wrong.—*See Stark. Ev.* 586.—*Comyn on Contracts,* 272.

*Argument for the plaintiffs.*—1. It is contended that the written request of *Lemuel Barney,* directed to *John Barney,* was not a part of the order, and that *Lemuel Barney* was not a party to the contract between the plaintiffs and *Charles Barney.* To constitute him a party to the contract, he must be either a *drawer* of the order, or a *guarantor* for its acceptance and payment. This writing does not make him either. If it was meant that he should become a *drawer,* and that the order should be paid with his funds in the hands of *John Barney,* why did he not sign the order with *Charles Barney,* or rather without *Charles Barney ?* And, if the writing was intended as a guarantee, why was it not endorsed upon the order itself, or drawn in such terms as to raise a contract between *Lemuel Barney* and the plaintiffs ? But this writing created no contract whatever. It bound neither *Lemuel Barney,* nor his effects, if the order had been accepted and paid by *John Barney.* The order was no concern or business of *Lemuel Barney* ; contained no promise of re-payment or accountability in any event whatever, nor any authority to pay the order with his effects. It follows, that the order was drawn by *Charles Barney* alone, without any guarantee of *Lemuel Barney,* and upon a person having no effects of the drawer in his hands.

2. The taking of such an order as this, was not a temporary bar to the plaintiffs' action, especially when it appears by the receipt, that it was not accepted as payment or satisfaction.

3. The plaintiffs were not bound to give notice of the non-acceptance.

4. The non-delivery of a written message, or request, of *Lemuel Barney,* was not a fraud upon the defendant, even if it occa-

FRANKLIN,
*January,*
1830.

Goodrich et al.
*vs.*
Barney.

FRANKLIN,
January,
1830.

Goodrich et al.
vs.
Barney.

sioned the non-acceptance of the order : 1. Because the plaintiffs were not obliged to present the order itself; but might have destroyed the same without affecting their remedy on the judgment. The defendant, having no effects in the hands of *John Barney,* could not have been injured by the destruction of the order, because it was indifferent to him, whether he *remained* indebted to the plaintiffs on the *judgment,* or *become* indebted for the same amount to *John Barney* on account of the order. This principle is exemplified in the case of witnesses.

2. Because the writing was conditional, and contemplated some new contract between the plaintiffs and *John Barney,* varying the terms of the order as to the payment. The order was payable in cash on sight ; and it was optional with the plaintiffs whether to vary these terms or not : and, when they determined to admit no variation, or, in other words, to make no agreement as to terms, they had a right to consider this paper as having become inapplicable to the business, and wholly useless.

The opinion of the court was pronounced by

HUTCHINSON, J.—The proceedings of the plaintiffs, in taking the order and commencing their action before they presented the order for acceptance and payment, and then presenting it without the writing from *Lemuel Barney,* that had been attached to it, seem to carry rather a fraudulent aspect; yet it is difficult to make it a defence to this action upon any principle recognized in law. If *John Barney* had had the effects of the defendant in his hands, at the time, this conduct of the plaintiffs would probably have made the order their own in satisfaction of their debt ; especially would it have had that effect if the writing, separated from the order, had possessed any binding force upon *Lemuel Barney,* or, upon his funds in the hands of *John Barney.* So if this order had been the plaintiff's only security for their debt. But this order was to be a satisfaction only upon acceptance and payment. The conduct of the plaintiffs cannot be justified in a moral point of view in any way, unless upon a supposition, that they considered the writing from *Lemuel Barney* of binding force, when they received it, and, afterwards discovering it to be otherwise, treated it as a nullity. But, whether the conduct of the plaintiffs be approved or not, the defendant seems to have lost nothing by it. He had no funds in the hands of *John,* that could be subjected to any hazard of loss ; and, if *John* had accepted and paid the order, the defendant would then have become his debtor for the same amount; or, if paid from the funds of *Lemuel,* in the hands of *John,* the defendant would have been a debtor of *Lemuel* for

FRANKLIN,
*January,*
1830.

Goodrich et al.
*vs.*
Barney.

the same amount. Either way, the defendant must be debtor till payment is made, and this action only calls upon him as a debtor for the true sum he owed the plaintiffs. *John* testifies, however, that he should have accepted and paid the order, if the writing of *Lemuel* had remained attached to it. If so, the defendant, as before observed, would have owed the sum either to *John* or *Lemuel.* But this testimony of *John* is merely testimony, of which this court can take no notice. If the case had shown us that the county court found the fact that *John*, in such an event, would have accepted and paid the order, that would have brought it under our consideration. But the fact is not so presented ; and it is possible that *John*, when he testified, did not know how he would have felt about accepting the order with said request of *Lemuel* attached to it, nor how able and ready he would have been to pay in season to prevent the very suit now before us.

The parties evidently contemplated no cause of action upon this order. The only remedy to collect this judgement, by force of law, was such an action as is now before us. If, therefore, the business about the order could have any effect favorable to the defendant, it must be a temporary suspension of the cause of action. Such an effect the law will not indulge. A covenant never to sue forms a bar ; but a covenant, ever so strongly drawn, not to sue for a given time, is no bar to the action. It may be the foundation of an action to recover damages for suing in violation of such covenant, but nothing more.

The judgement of the county court is affirmed.

*Royce* and *Hunt*, for plaintiffs.

*Brown* and *N. L. Whittemore*, for defendant.